United States District Court
Eastern District of New York                                    2:17-cv-06425

| |
|---|
| Houman Khallili, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| - against - |
| Pure Brazilian, LLC, |
| Defendant |

Complaint

Houman Khallili ("plaintiff") individually and on behalf of all others similarly situated, by attorneys, alleges upon information and belief, except for those allegations pertaining to plaintiff, which are based on personal knowledge:

1. Pure Brazilian, LLC ("defendant") manufactures Pure Brazilian Coconut Water, commonly known as "Pure Brazilian" (the "Product"), sold in 13.5-ounce bottles and available in brick-and-mortar stores owned by third-parties.

2. Defendant manufactures the Products through two main production steps.

3. The first is the extraction of coconut water[1] through slicing it in half or perforating it at the top, which releases the liquid into a collection tray before being bottled.

4. The second is high pressure processing, where the bottles are subjected to pressure up to 87,000 pounds per square inch ("psi").

5. This reduces the biological, enzymatic and bacterial activity, but increases shelf life from 3-5 days to 6-8 weeks.

6. Defendant represents its product as "cold pressed" and "pure" on the front

---

[1] Coconut water refers to the juice derived from a coconut in the form of the liquid endosperm. To avoid any ambiguity and to provide consistency, the term "coconut water" will be used as opposed to "coconut juice," unless otherwise indicated or required by the context.

1

label, while statements on the back stress "Live Pure" and "Drink Pure."

Principal Display Panel       Supplemental Information Panel

 

7. Cold pressing is a juice extraction method where pressure is applied to the pulp of fruits and vegetables, resulting in the liquids contained therein being released.

8. Consumers pay a premium for a cold pressed juice product because it means more nutrients are retained than if a centrifugal machine like a blender was used.

9. It is false to describe the Products as cold pressed because the juice inside a coconut is not extracted through a pressure mechanism.

10. By highlighting an extraction step and not disclosing the processing step, consumers are misled into believing the Product is not modified from its original state.

2

11. Reasonable consumers interpret the term "pure" in the context of juice to describe and identify an unprocessed and untreated product.

12. Because coconut water is available in an unprocessed and untreated form, defendant's "pure" representation falsely signifies that its Products are of a higher quality and value than they actually are.

13. Defendant's use of the word "pure" implies that other coconut waters produced through the same production steps are "impure" or "not pure," resulting in consumers paying more money for defendant's higher priced product.

14. Defendant mimics certain indicia associated with unprocessed juice products, such as the statements of "HIGHLY PERISHABLE" and "ATTENTION:."

Information Panel 2



15. By falsely claiming the Product is "HIGHLY PERISHABLE," defendant attempts to equate its Products with those that are not processed or treated after being extracted, since those have a shelf-life of 3-5 days.

16. Defendant is aware that where a juice product does not undergo a processing step after extraction, it is required by law to state "WARNING:," followed by text which advises that consumption of the product may be harmful.

17. Consumers seek out and will pay more for products which they believe have not been processed, owing to a higher level of biological activity

18. Even though defendant's Products are not required to have such a label because they are processed, defendant nonetheless uses the word "ATTENTION:" to alert the consumer to something purportedly serious and consequential.

19. Unlike the required "WARNING:" statement where the font size is uniform, the text which follows defendant's "ATTENTION:" is of a smaller font, which has the effect of discouraging and making it difficult to read what is actually there.

20. Moreover, no reasonable consumer would expect a label to imitate something so pedantic and technical as a warning label, such that after seeing "ATTENTION:" they will not even be inclined to read what follows, and will accept the overall impression that the Products are indeed "pure" since they contain the equivalent of a warning label.

21. The above misrepresentations are material to reasonable consumers.

22. Excluding tax, the products cost approximately between $3.99 and $5.99, a premium price compared to other coconut water products made in similar production steps.

## Jurisdiction and Venue

23. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2).

24. Upon information and belief, the aggregate amount in controversy is in excess of $5,000,000.00, exclusive of interests and costs.

25. This Court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

26. Venue is proper because plaintiff and many class members reside in this District and defendant has been doing business in this District and in New York.

27. A substantial part of events and omissions giving rise to the claims occurred in this District.

## Parties

28. Plaintiff is a citizen of Nassau County, New York.

29. Pure Brazilian, LLC is a limited liability company formed under the laws of Wyoming, with its principal place of business in Wyoming.

30. Upon information and belief, no members of Pure Brazilian, LLC are citizens of New York.

31. In 2016, plaintiff purchased a Pure Brazilian product for no less than $4.99, excluding tax, at a store within this District.

32. Plaintiff paid a premium for the product because prior to purchase, he saw and relied upon the representations described herein and understood same to mean the Products were pure and not processed after being extracted.

33. Plaintiff purchased the product because he intended to consume a product which possessed the attributes and features described herein and opted against buying a less expensive coconut water product not so represented.

## Class Allegations

34. Defendant's representations uniformly impacted consumers.

35. The class is all consumers in all states who purchased any Products bearing any of the actionable representations herein during the statutes of limitation periods.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

37. The class is so numerous that joinder of all members, even if permitted, is impracticable, as plaintiff believes there are hundreds of thousands of members.

38. Common questions of law or fact predominate and include whether the representations were likely to deceive reasonable consumers and if plaintiff and class members are entitled to damages.

39. Plaintiff's claims are typical to other members' because all were subjected to the same representations and the basis for relief is common to all members.

40. Plaintiff is an adequate representative because his interests do not conflict with other class members.

41. Plaintiff's counsel is competent and experienced in complex class action litigation of consumer protection issues and intends to prosecute this action to adequately and fairly protect class members' interests.

42. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable. Individual actions risk inconsistent results, would be repetitive and are impractical to justify, as the claims are modest.

43. Plaintiff seeks class-wide injunctive relief because the practices continue, with the injunctive class maintained as a class action because it meets the same criteria as the non-injunctive class.

Violation of New York General Business Law § 349

44.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

45.     Defendant's acts and practices are not unique to the parties and have a broader impact on the public.

46.     Defendant's representations of the Products as pure and only indicating an extraction step is deceptive because the Products undergo a processing step and are not in their original, unaltered state.

47.     Defendant's other labeling statements – "HIGHLY PERISHABLE" and "ATTENTION:" are intended to reinforce that the Products are not processed.

48.     The representations and omissions were material and relied on by plaintiff and class members, who paid more than they would have without getting all they bargained.

49.     As a result, plaintiff and class members are entitled to damages.

Violation of New York General Business Law § 350

50.     Plaintiff repeats and realleges each and every allegation contained in all foregoing paragraphs as if fully set forth herein.

51.     Defendant's advertising is not unique to the parties and affects the public.

52.     Defendant's representations of the Products as "pure" are misleading because a reasonable consumer expects that a juice labeled as pure will not have been processed and will be in its unaltered state.

53.     Defendant misleads consumers by only disclosing the occurrence of an extraction step without mentioning any processing steps, and imitates certain aspects of juice labels – "HIGHLY PERISHABLE" and "ATTENTION:" –more likely to be found on juice

products that are actually not processed.

54. Defendant's false advertising was relied upon by plaintiff and class members, who paid a premium for the Products greater than they otherwise would have and did not receive all that they bargained for.

55. As a result, plaintiff and class members are entitled to damages.

### Fraud

56. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

57. Defendant's statements that the products are pure were false because they were subjected to a processing step after being extracted, which altered the products from their original and undisturbed state following extraction.

58. Defendant intended to deceive consumers through its other representations, such as only informing them of an initial, extraction step.

59. Defendant falsely described the Products as "HIGHLY PERISHABLE," despite having a shelf-life of 4-6 weeks as a result of the processing step.

60. Defendant's inclusion of the "ATTENTION:" statement was modeled after the federally required "WARNING:" statement for juice that is not processed.

61. By including the "ATTENTION:" statement, defendant attempted to draw the consumer's attention to something of apparent significance and urgency – that the Product was purportedly not processed.

62. Defendant used a smaller font for the text following "ATTENTION:" so that reading the entire statement would be difficult and quickly abandoned.

63. Defendant intended for consumers to rely on its claims that the Products were

8

pure because it went to significant lengths to imitate labeling elements which are exclusively present on products which are not subjected to a processing step following extraction.

64. The representations of the Products as pure were material because plaintiff and class members intended to purchase an unprocessed product that had not been modified.

65. Plaintiff and class members relied upon the Products being identified and represented as Pure, sustaining injury through paying more than they would have absent such claims, entitling them to damages.

## Implied Warranty of Merchantability

66. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

67. Defendant manufactures, distributes and sells juice, and warranted to plaintiff and class members that the Products were pure without informing them the products were not in an unaltered or unmodified state following extraction.

68. The Products do not conform to the affirmations of fact and promises on the Products and the accompanying literature, wholly due to defendant's actions.

69. As a result of breaching the implied warranty of merchantability, plaintiff and class members were damaged in the amount paid for the Products.

## Unjust Enrichment

70. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71. Defendant obtained benefits and monies because the Products were not as represented, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of such inequitably obtained profits.

9

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, plaintiff, on behalf of himself and all others similarly situated, prays for judgment:

1. Declaring this a proper class action and certifying plaintiff as class representative;

2. Entering preliminary and permanent injunctive relief and directing defendant to correct their practices to comply with the law;

3. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law claims and GBL §§ 349, 350;

4. Awarding plaintiff and class members costs and expenses incurred, including reasonable allowance of fees for plaintiff's attorneys and experts; and

5. Such other and further relief as the Court deems just and proper.

Dated:  November 4, 2017

Respectfully submitted,

Levin-Epstein & Associates, P.C.

By:   /s/ Joshua Levin-Epstein
Joshua Levin-Epstein
1 Penn Plaza, Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Sheehan & Associates, P.C.

By:   /s/ Spencer Sheehan
Spencer Sheehan
891 Northern Blvd., Suite 201
Great Neck, NY 11021
Tel: (516) 303-0552
Fax: (516) 234-7800
spencer@spencersheehan.com

2:17-cv-06425
United States District Court
Eastern District of New York

Houman Khallili, individually on behalf of himself and all others similarly situated,

          Plaintiff,

  - against -

Pure Brazilian, LLC,

          Defendant.

## Complaint

Levin-Epstein & Associates, P.C.
1 Penn Plaza
Suite 2527
New York, NY 10119
Tel: (212) 792-0046
Fax: (212) 563-7108
joshua@levinepstein.com

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  November 4, 2017
        New York, New York

                                                /s/ Joshua Levin-Epstein
                                                Joshua Levin-Epstein